UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CALVIN T. WALKER,

                       Plaintiff,              Civil Action No. 20-13031

v.                                      Linda V. Parker
                                        United States District Judge
COMMISSIONER OF
SOCIAL SECURITY,                    David R. Grand
                                        United States Magistrate Judge

                       Defendant.

_____/

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 18)**

Plaintiff Calvin T. Walker ("Walker") brings this action pursuant to 42 U.S.C. §
405(g), challenging the final decision of Defendant Commissioner of Social Security
("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under
the Social Security Act (the "Act"). Both parties have filed summary judgment motions
(ECF Nos. 14, 18), which have been referred to this Court for a Report and
Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.     **RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's
("ALJ") conclusion that Walker is not disabled under the Act is not supported by
substantial evidence. Thus, the Court **RECOMMENDS** that the Commissioner's Motion
for Summary Judgment **(ECF No. 18)** be **DENIED**, Walker's Motion for Summary
Judgment **(ECF No. 14)** be **GRANTED IN PART** to the extent it seeks remand and

**DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.   REPORT

### A.   Background

Walker was 35 years old at the time of his alleged onset date of August 28, 2015, and at 6'0" tall weighed approximately 245 pounds.  (PageID.250, 253).[1]  He completed high school but had no further education.  (PageID.88, 254).  He worked for nearly fifteen years as a production worker, mostly for the same company, but he stopped working in August 2015 after he was injured in a car accident.  (PageID.89-90, 93, 114-15, 246, 253-54).  He now alleges disability as a result of neck and back pain, a traumatic brain injury, post-concussion syndrome, and a heart valve disorder.  (PageID.100-02, 253, 297).

After Walker's application for DIB was denied at the initial level on December 20, 2018 (PageID.150-54), he timely requested an administrative hearing, which was held on October 9, 2019, before ALJ Kevin Fallis (PageID.82-124).  Walker, who was represented by attorney Donald Popielarz, testified at the hearing, as did vocational expert ("VE") Pauline McEachin.  (*Id.*).  On December 27, 2019, the ALJ issued a written decision finding that Walker is not disabled under the Act.  (PageID.61-77).  On September 15, 2020, the Appeals Council denied review.  (PageID.47-51).  Walker timely filed for judicial review of the final decision on November 12, 2020.  (ECF No. 1).

---

[1] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 11.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first

four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Walker is not disabled under the Act.  At Step One, the ALJ found that Walker has not engaged in substantial gainful activity since August 28, 2015 (the alleged onset date).  (PageID.64). At Step Two, the ALJ found that he has the severe impairments of degenerative disc disease of the cervical and lumbar spine; neuropathy; hypertension; coronary artery disease; aortic valve disorder; post-concussion syndrome; post-traumatic stress disorder; traumatic brain injury; and obesity.  (*Id.*).  At Step Three, the ALJ found that Walker's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Walker's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: can stand or walk for about four hours in an eight-hour workday, with normal breaks; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to wetness and vibration; must avoid even moderate use of hazardous moving machinery; must avoid all exposure to unprotected heights; limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions and routine workplace changes; and can have only occasional interaction with the public, coworkers, and supervisors.  (PageID.67).

4

At Step Four, the ALJ found that Walker is not able to perform any of his past relevant work.  (PageID.75).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Walker is capable of performing the jobs of inspector (40,000 jobs nationally), hand packager (40,000 jobs), and bench assembler (30,000 jobs).  (PageID.76).  As a result, the ALJ concluded that Walker is not disabled under the Act.  (*Id.*).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'"  *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.     Analysis

In his motion, Walker argues that the ALJ erred in evaluating the medical opinion evidence of record.[2] (ECF No. 14, PageID.643-45). For the reasons set forth below, the Court agrees and concludes that remand is required.

---

[2] Walker also argues that the ALJ erred in formulating his RFC and in evaluating his subjective complaints. (ECF No. 14, PageID.645-51). Because the Court is recommending remand on other grounds, it need not address the merits of these arguments in detail. On remand, however, the ALJ should ensure that proper consideration is given to both of these issues.

*1.    The Relevant Medical Evidence*[3]

On August 28, 2015, Walker was taken to the Covenant Healthcare emergency room after he was involved in a motor vehicle accident.  (PageID.308-11).  He complained of neck and back pain and was unable to fully recall the accident.  (PageID.308).  A CT scan of his lumbar spine showed a minimally bulging annulus without superimposed disc herniation at L5-S1.  (PageID.317).  A CT scan of the cervical spine and head were unremarkable.  (PageID.317-18).

On September 11, 2015, Walker presented to Marvin Bleiberg, M.D. at Michigan Spine & Pain, reporting constant neck pain (with numbness and tingling in the right arm), back pain (radiating down both legs), and headaches, all of which began after the car accident.  (PageID.519-25).  EMG testing, a digital motion x-ray, and MRIs were ordered; Walker was advised to start physical therapy and chiropractic care; and attendant care and medical transportation were prescribed.  (*Id.*).  An MRI of Walker's brain, performed on September 21, 2015, was essentially unremarkable, showing only minimal bilateral mastoiditis.  (PageID.486-87).  However, an MRI of the cervical spine performed the same day showed reversal of cervical lordosis; disc bulge at C3-C4, indenting the ventral thecal sac; disc herniation at C4-C5 with caudad migration of disc material behind the body of C5 vertebra, compressing the ventral thecal sac; and disc herniations with annular tears, compressing the ventral thecal sac, at C5-C6 and C6-C7.  (PageID.526-27).  Similarly, a September 21, 2015 MRI of Walker's lumbar spine showed disc bulges at L3-L4, L4-L5,

---

[3] Because the Court finds error in the ALJ's evaluation of medical opinions regarding Walker's physical limitations, it will primarily discuss medical evidence pertaining to those conditions.

7

and L5-S1, compressing the ventral thecal sac. (PageID.528-29). A digital motion x-ray performed in March 2016 showed damage to several cervical ligaments. (PageID.530-37).

At a follow-up visit to Michigan Spine & Pain in May 2016, Walker reported less stiffness with physical therapy, but noted that it was too early to tell if it was helping his range of motion. (PageID.434). His Nucynta prescription for pain was renewed, and a cervical facet injection was recommended. (PageID.434-36). At his next visit to Dr. Bleiberg, on June 16, 2016, Walker reported that insurance had cut off his medical transportation benefits and, as a result, he had been forced to cancel his physical therapy appointments because he did not feel comfortable driving. (PageID.429-32). A month later, Dr. Bleiberg indicated that Walker was "regressing" without physical therapy and was unable to get the recommended cervical injection because he did not have transportation. (PageID.425-28). In September 2016, Dr. Bleiberg again noted that Walker was "not doing well as he cannot get the treatment he needs" for insurance reasons. (PageID.417).

In January 2017, Walker reported continued neck pain, which intermittently radiated down both arms, with numbness and tingling in the hands, as well as low back pain radiating down both legs, with numbness and tingling in the feet. (PageID.403). He indicated, however, that he was able to bathe and dress himself and vacuum for short periods of time, so his attendant care hours were reduced. (PageID.403-05). On examination in March 2017, Walker had limited range of motion of the neck in all planes, along with tenderness to palpation of the neck and trapezius muscles. (PageID.396-99). This reduced range of motion remained largely unchanged through June 2017.

8

(PageID.384-95).  On August 7, 2017, Dr. Bleiberg opined that Walker was unable to lift, push, or pull over 10 pounds, and that he must be able to alternate sitting, standing, and walking, as needed.  (PageID.538-40).  Dr. Bleiberg further opined that Walker was limited to occasional bending and twisting; no kneeling, stooping, crouching, crawling, or climbing ladders; and no work above the shoulder level.  (*Id.*).  He concluded that Walker was unable to work.  (*Id.*).

Updated MRIs of the lumbar and cervical spine were performed in February 2018.[4] The cervical spine MRI showed a mild increase in the disc space and mild posterolateral disc bulge at C5-C6 with associated focal annular tear; a posterolateral disc bulge at C5-C6 causing neural foramen stenosis with possible nerve root compromise; and a mild posterior disc bulge at C6-C7.  (PageID.482-83).  The MRI of Walker's lumbar spine showed a localized posterior longitudinal ligament injury at L5-S1 where it was detached from the posterior annular ring.  (PageID.484-85).

At Dr. Bleiberg's recommendation (PageID.377), Walker saw Mark Adams, M.D. for a neurosurgical consult regarding his neck and back pain on March 22, 2018. (PageID.447-50).  At that time, Walker reported undergoing one injection, which made his pain worse.  (*Id.*).  On examination, Walker exhibited palpable cervical spinous process tenderness at C3-C7 and L3-S1, with limited range of motion in both the cervical and lumbar spine and increased pain upon extension, flexion, and lateral rotation.  (*Id.*).

---

[4] These MRIs were originally ordered in January 2017, but because of Walker's lack of insurance and transportation, they were not performed until February 2018.  (PageID.380, 381, 384, 388, 396, 405).

However, straight leg raising was negative, and Walker exhibited normal strength of the lower extremities. (*Id.*). At a follow-up visit in May 2018, physical examination findings were unchanged, and Dr. Adams recommended surgery – specifically, an anterior cervical discectomy with fusion and plating at C5-C6. (PageID.450-51).

There is no indication in the record that surgery was performed; rather, Walker underwent additional imaging in October 2018. At that point, an MRI of the cervical spine showed disc bulges compressing the ventral thecal sac at C2-C3, C4-C5, and C6-C7 and, at C5-C6, posterocentral disc protrusion type herniation with increased T2 signals (edema/inflammation associated with annular tears), compressing the thecal sac and causing mild spinal canal stenosis. (PageID.458-59). An MRI of the lumbar spine showed disc bulge, indenting the thecal sac and causing mild bilateral neuroforaminal narrowing at L4-L5, and disc bulge, compressing the thecal sac and causing mild right neuroforaminal narrowing at L5-S1. (PageID.461-62). On November 2, 2018, Dr. Bleiberg noted that these updated imaging studies showed "more abnormality due to [the] initial injury," and manipulation under anesthesia would be considered, after trying massage and chiropractic treatment. (PageID.497-500). On November 30, 2018, Dr. Bleiberg opined that Walker was incapable of any functional activity and again indicated that Walker could not work. (PageID.541-43).

On December 19, 2018, Robert Nelson, M.D., a state agency physician, reviewed Walker's medical record and opined that Walker could perform light work, except that he could stand or walk with normal breaks for a total of only 4 hours in a normal workday; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently

balance and stoop; occasionally kneel, crouch or crawl; must avoid concentrated exposure to wetness and vibration; and must avoid even moderate exposure to hazards. (PageID.136-38).

Walker did not return to see Dr. Bleiberg until June 27, 2019, when he was able to obtain secondary insurance. (PageID.551-54). Dr. Bleiberg again suggested physical therapy and massage, indicating that manipulation under anesthesia was still being considered, as Walker had "failed to reach the expected level of clinical outcome." (PageID.553). That same day, Dr. Bleiberg completed a Disability Parking Placard Application, indicating that Walker could not walk more than 200 feet without having to stop and rest due to his low back impairments. (PageID.544).

Subsequently, on August 21, 2019, Walker presented to the Covenant Healthcare emergency room with lower extremity swelling and shortness of breath. (PageID.562-70). A transthoracic echocardiogram indicated mild concentric left ventricular hypertrophy, mildly increased left ventricular internal cavity size, mild dilated left and right atria, mild mitral valve regurgitation, and moderate to severe aortic regurgitation. (PageID.568). A chest CT also indicated congestive heart failure. (*Id.*). Walker was admitted to the hospital and surgery to perform an aortic valve replacement was recommended; however, Walker wanted to be discharged home and indicated he would follow up with cardiothoracic surgery as an outpatient. (PageID.567). When he then saw Shalini Modi, M.D. at Henry Ford Hospital on September 11, 2019, she reviewed his records, agreeing that there was evidence of congestive heart failure, as well as severe acute aortic regurgitation, which required immediate aortic valve replacement. (PageID.610-14).

11

> 2.    *The ALJ's Evaluation of the Medical Opinion Evidence is Not Supported by Substantial Evidence*

The regulatory criteria for weighing medical opinions with respect to claims, like Walker's, filed on or after March 27, 2017, is set forth at 20 C.F.R. § 404.1520c. Specifically, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." 20 C.F.R. § 404.1520c(a). Rather, ALJs must consider medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* These factors include:

> (1)    Supportability.   The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2)    Consistency.   The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

> (3)    Relationship with the claimant.    This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section … [which include length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship].

> (4)    Specialization.  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

> (5)    Other factors.  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.

20 C.F.R. § 404.1520c(c).  The most important factors in this analysis are a medical opinion's supportability and consistency with other sources in the record.  20 C.F.R. § 404.1520c(b)(2).  Therefore, ALJs are required to explain how they considered the supportability and consistency factors for a medical source's medical opinions in the determination or decision.  *Id.*

In this case, the ALJ considered the August 7, 2017 and November 30, 2018 opinions of Walker's treating physician, Dr. Bleiberg.  (PageID.73).  As set forth above, Dr. Bleiberg opined in 2017 that, due to Walker's neck and back impairments, he was unable to lift, push, or pull any amount over 10 pounds and that he must be able to alternate between sitting, standing, and walking as needed.  (PageID.538-40).  Dr. Bleiberg further opined that Walker was limited to occasional bending and twisting; no kneeling, stooping, crouching, crawling, or ladder climbing; and no work above the shoulder level.  (*Id.*).  Similarly, in November 2018, Dr. Bleiberg opined that Walker was incapable of any functional or exertional activity and was unable to work.  (PageID.541-43).  The ALJ evaluated these opinions in his decision, but said only:

> As they relate to [Walker's] functional limitations, the undersigned finds these opinions to be unpersuasive, as they are inherently contradictory without any supporting evidence for either the enumerated limitations or the change in limitations from one opinion to the other, and they are both inconsistent with the record as a whole including examination findings (3F/1-2; 5F/8, 11, 15, 19, 63; 6F/2, 5; 12F/3), imaging studies (1F/10; 7F/25-26, 28; 12F/9, 11; 13F/8), and [Walker's] testimony.

(PageID.73).  The Court has no issue with the ALJ's rejection of Dr. Bleiberg's opinion about Walker's ability to work, as that is an issue reserved to the Commissioner.  *See*

*Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) (finding that the "ALJ reasonably gave no weight to [the doctor's] opinion because her conclusion that [the claimant] is totally disabled is a determination reserved to the Commissioner"). However, for the reasons explained more fully below, the Court finds that the reasons articulated by the ALJ for deeming Dr. Bleiberg's opinions "unpersuasive" are not supported by substantial evidence, and that remand is required so the ALJ can perform a more even and thorough evaluation of those opinions and the record evidence.

As an initial matter, the ALJ cites no evidence in support of his conclusion that Dr. Bleiberg's opinions regarding Walker's functional limitations were "inherently contradictory." And, that conclusion simply doesn't follow. Dr. Bleiberg's opinions were based on separate evaluations of Walker's functional abilities – performed more than fifteen months apart – as his condition evolved over time. That Dr. Bleiberg reached *different conclusions*, at *different times*, based on *different evidence*, doesn't mean the conclusions were "contradictory," and certainly not "inherently contradictory," which suggests some sort of implicit shortcoming in the doctor's analysis.

The ALJ's conclusion that Dr. Bleiberg's opinions were "without any supporting evidence for either the enumerated limitations or the change in limitations from one opinion to the other" is also flawed. (PageID.73). Indeed, the record contains evidence that at least arguably supports Dr. Bleiberg's decision to impose greater restrictions in 2018 than he imposed in 2017. For example, Dr. Bleiberg opined in 2017 that Walker could not lift, push, or pull more than 10 pounds and that he must be able to alternate between sitting, standing, and walking as needed. (PageID.538-40). By November 2018, however, Dr.

14

Bleiberg believed that Walker could no longer lift, push, or pull any amount of weight and could not sit, stand, or walk on a continuous basis.  (PageID.541-43).  Medical evidence from the interim period supports this reduced functional capacity, including updated MRIs of the lumbar and cervical spine, performed in February 2018, which showed worsening pathology.  (PageID.482-85).  As a result, Dr. Bleiberg sent Walker to Dr. Adams, a neurosurgeon, who, in May 2018, recommended an anterior cervical discectomy with fusion and plating at C5-C6.  (PageID.450-51).  Additional imaging performed in October 2018 showed even "more abnormality due to [the] initial injury[.]"  (PageID.500).  Thus, the medical records – which document a continued worsening of Walker's neck and back impairments – belie the ALJ's conclusion that Dr. Bleiberg's opinions as to Walker's functional limitations were "inherently contradictory" and without evidentiary support.

The evidence cited by the ALJ in support of his conclusion that Dr. Bleiberg's opinions were inconsistent with examination findings and imaging studies also appears to undercut such a conclusion.[5]  The ALJ asserts that examination findings found on the pages referenced below are inconsistent with Dr. Bleiberg's opinions; however, close examination of those pages suggests that the referenced findings actually *support* Dr. Bleiberg's opinions.  Specifically:

- 3F/1-2:  At a visit where Walker complained of high blood pressure, body aches, and a cough, his primary care physician, Mirza Hussain, M.D., noted that his back pain was "not evaluated or treated today but mentioned for completion of records[.]"

---

[5] The ALJ gives no indication as to which portions of Walker's testimony are purportedly at odds with Dr. Bleiberg's opinions, merely referencing in passing the entirety of his "Hearing testimony[.]"  (PageID.73).  And, indeed, Walker testified as to numerous ongoing limitations.

- <u>5F/8</u>: In July 2017, Dr. Bleiberg noted spasm and tenderness in the low back. Lumbar spine range of motion was limited in extension and side bending more than flexion and rotation. There was pain with extension mainly, but some in all planes. Transfer from sit to stand was slow and guarded.

- <u>5F/11</u>: On June 20, 2017, Dr. Bleiberg noted that lumbar range of motion was limited in all planes. Flexion was limited by at least 50% with pain and extension by at least 75% with pain. Involuntary muscle spasm and tenderness were also noted.

- <u>5F/15, 19</u>: On April 20 and May 18, 2017, Dr. Bleiberg observed limited range of motion in all planes of the cervical spine (50% lacking in extension and bilateral rotation), with tenderness to palpation and diffuse muscle spasm.

- <u>6F/2, 5</u>: On March 22 and May 10, 2018, Dr. Adams noted palpable cervical spinous process tenderness from C3-C7 and, at the May visit, from L3-S1. Additionally, there was limited range of motion of both the cervical and lumbar spine with increased pain upon extension, flexion, and right or left lateral rotation at both visits.

- <u>12F/3</u>: In September 2015, Dr. Bleiberg noted straightening of the cervical and lumbar lordosis, reduced range of motion, pain with motion and upon palpation, and a positive straight leg raise and Patrick's Sign.

Similarly, the ALJ asserted that imaging studies contained on the following pages are inconsistent with Dr. Bleiberg's opinions, but, in reality, that appears not to be the case:

- <u>1F/10</u>: A CT of Walker's lumbar spine, performed in the emergency room on the day of his car accident, showed straightening of the normal lumbar lordotic curve, which may be related to muscle spasm, and minimally bulging annulus without super imposed disc herniation at L5-S1.

- <u>7F/25-26, 28</u>: A February 2018 cervical spine MRI showed a mild increase in the disc space and mild posterolateral disc bulge at C5-C6 with associated focal annular tear; a posterolateral disc bulge at C5-C6 causing neural foramen stenosis with possible nerve root compromise; and a mild posterior disc bulge at C6-C7. An MRI of Walker's lumbar spine performed at the same time showed a localized posterior longitudinal ligament injury at L5-S1 where it was detached from the posterior annular ring.

- <u>12F/9, 11</u>: A September 2015 MRI of the cervical spine showed reversal of cervical lordosis; disc bulge at C3-C4, indenting the ventral thecal sac; disc

16

herniation at C4-C5 with caudad migration of disc material behind the body of C5 vertebra, compressing the ventral thecal sac; and disc herniations with annular tears, compressing the ventral thecal sac, at C5-C6 and C6-C7. Similarly, a September 21, 2015 MRI of Walker's lumbar spine showed disc bulges at L3-L4, L4-L5, and L5-S1, compressing the ventral thecal sac.

- 13F/8: A digital motion x-ray performed in March 2016 showed damage to several cervical ligaments.

Finally, contrary to the ALJ's finding, Walker testified that his neck and back pain is "constant" and exacerbated by activity. (PageID.102-03). He also testified to getting "shooting pain down [his] arm and then partway down [his] legs." (PageID.104). He indicated that his issues were "not getting better . . . [s]ame or worse." (PageID.108). Finally, when the ALJ mentioned Walker's "great work history," he responded, "But it [the accident] happened. Yeah, that's what I did my whole life, I went to work. Because I made my money for my family. I can't do that anymore." (PageID.114-15).

In sum, the ALJ's reasons for finding Dr. Bleiberg's opinions "unpersuasive" are logically flawed and belied by the record evidence, including that which the ALJ cited.[6] Under these circumstances, the Court simply cannot find that the ALJ's evaluation of these key medical opinions is supported by substantial evidence. As such, remand is required for a more even and thorough evaluation of Dr. Bleiberg's opinions and the medical and other record evidence.[7]

---

[6] The Court notes that the ALJ did not discuss several of the other factors set forth in 20 C.F.R. § 404.1520c(c), including the length of Walker's treatment relationship with Dr. Bleiberg (approximately four years), the frequency of examinations (every few weeks for years), and Dr. Bleiberg's specialization in physical medicine and rehabilitation. All of these factors would seem to lend further credence to Dr. Bleiberg's opinions.

[7] Walker also argues that the ALJ erred in failing to address Dr. Modi's treatment notes, which documented evidence of congestive heart failure, as well as severe acute aortic regurgitation, and

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's

Motion for Summary Judgment **(ECF No. 18)** be **DENIED**, Walker's Motion for

Summary Judgment **(ECF No. 14)** be **GRANTED IN PART** to the extent it seeks remand

and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to

sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings

consistent with this Report and Recommendation.


Dated: May 11, 2022                          s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge


### <u>NOTICE REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy

hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*,

474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United

States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which

---

recommended immediate aortic valve replacement.   (ECF No. 14, PageID.644-45 (citing
PageID.610-14)).  The Commissioner disagrees, asserting the general proposition "that '[an] ALJ
can consider all the evidence without directly addressing in his written decision every piece of
evidence submitted by a party.'"  (ECF No. 18, PageID.681 (citing *Kornecky*, 167 F. App'x at
508)).  On remand, the ALJ should consider the import of these treatment notes, as they appear to
demonstrate severe and ongoing pathology.

18

raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2022.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager